[No. 4698.    Decided July 8, 1903.]

CHARLES S. HINCHMAN, *Appellant*, v. ISAAC W. ANDERSON *et al.*, *Respondents*.

LIMITATION OF ACTIONS — SUSPENSION BY STATUTORY PROHIBITION.

The fact that a mortgagee delayed the bringing of a personal action against the indorsers on the note secured by the mortgage until after the conclusion of the foreclosure proceeding would not operate as a suspension of the statute of limitations under Bal. Code, § 4812, which provides that "when the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action," by reason of the fact that the mortgagee is prohibited by Id., § 5893, from prosecuting any other action for the same debt while foreclosing his mortgage, inasmuch as the remedy was open to the mortgagee of including the personal action with the foreclosure proceeding.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM H. SNELL, Judge.    Affirmed.

*E. R. York,* for appellant:

A statutory prohibition suspends the running of the statute of limitations. *Hoff v. Funkenstein,* 54 Cal. 233; *Blaskower v. Steel,* 23 Ore. 106; *Brehm v. Mayor, etc., of New York,* 104 N. Y. 186 (10 N. E. 158); *Moore v. Smith,* 7 S. E. 485; *Hall v. Brennan,* 64 Hun, 394 (19 N. Y. Supp. 623); *St. Paul, M. & M. Ry. Co. v. Oleson,* 91 N. W. 294; *Gordon v. Gilfoil,* 99 U. S. 168 (25 L. ed. 383).

A promise by the obligor that, if the obligee would delay proceedings to collect, he should have the same rights for the period delayed that he then had, is a waiver of the statute of limitations for the stipulated period. *Webber v. Williams College,* 23 Pick. 302.

*George Ladd Munn, Reid & Meade, B. S. Grosscup* and *A. G. Avery,* for respondents:

A statutory prohibition, to be effective, must be one which arises outside of a creditor's volition. He cannot by his affirmative action create such a condition as to bring himself apparently within its terms, and then say it was not himself, but the statute, which worked the prohibition. A debtor's right to have claims enforced before they become stale and his evidence of defense lost is not to be defeated by any such subterfuge. *Siegfried v. New York, etc., R. R. Co.,* 34 N. E. 331; *Kirby v. Lake Shore & M. S. Ry. Co.,* 120 U. S. 130 (30 L. ed. 569); *Merrill v. Town of Monticello,* 66 Fed. 165; *Walker v. Peay,* 22 Ark. 103; *Null v. White Water Valley Canal Co.,* 4 Ind. 431; *Bauserman v. Charlott,* 26 Pac. 1051; *Spokane County v. Prescott,* 19 Wash. 425; *Palmer v. Palmer,* 24 Am. Rep. 609.

The opinion of the court was delivered by

MOUNT, J.—Plaintiff brought this action in the lower court to recover upon five promissory notes. The defendants appeared separately and demurred to the amended complaint, upon the ground that the same did not state facts sufficient to constitute a cause of action, and also upon the ground that the action was not commenced within the time limited by law. These demurrers were sustained. The plaintiff elected to stand upon his complaint, and the action was dismissed. From the order of dismissal, plaintiff appeals.

It will be necessary to consider only the last ground of demurrer. The facts stated in the complaint are substantially as follows: On November 27, 1891, the Point Defiance Railway Company executed and delivered to Henry Wood five negotiable promissory notes for $10,000 each, due one year from date. Each of respondents, before delivery of the notes, joined in the execution of an indorsement on the back of each note as follows:

"We hereby severally join in the execution of the within note as original makers thereof and waive presentation and protest notice."

The railway company, at the time of the making of the notes, and as security for the payment thereof, executed and delivered to the payee a mortgage upon its railway franchises, equipment, etc., in the city of Tacoma. Thereafter, and before maturity, the payee assigned and transferred the notes and mortgage to the appellant. The fourth paragraph of the amended complaint is as follows:

"That said promissory notes were not paid at the maturity thereof, nor any of them, nor any part of any of them, and in January, 1894, payment thereof being still in default, plaintiff placed said notes and mortgage in the hands of Charles S. Fogg, an attorney, residing at Ta-

coma, Washington, with directions to bring suit upon said notes and mortgage. That defendants herein, and each of them, were then desirous and anxious, and it was a matter of interest, value and importance to said defendants that plaintiff should first exhaust his remedy against the mortgaged property, and, if possible, obtain satisfaction of his claim out of the mortgaged property without first enforcing the individual liability of the defendants upon said notes, and without making them parties defendant to the foreclosure suit which plaintiff was then preparing to commence. The plaintiff thereupon, and in compliance with the express desires and request of the defendants herein, and in consideration of their agreement and promises that by his proceeding in such manner these defendants would not claim that they were released or discharged from any liability to the plaintiff by so doing, caused his said attorney to prepare a bill of complaint for the foreclosure of said mortgage, making the mortgagor corporation a party defendant and omitting the defendants in this action; that said bill of complaint alleged the execution and delivery of said notes and mortgage, and their assignment to the plaintiff, that each and every of said notes was due and unpaid, and asked for the appointment of a receiver of the mortgaged property, the foreclosure of the mortgage and sale of the property, and payment of said notes, with interest and costs, from the proceeds of said sale; that said bill of complaint was exhibited to the mortgagor and the defendants herein, and an answer of the mortgagor to said bill was prepared and executed by the mortgagor, in which the execution and delivery of said notes and mortgage, their subsequent assignment to plaintiff, and that said notes were due and unpaid, was admitted, and consenting to the appointment of a receiver and the entry of a decree of foreclosure as prayed; also a decree of foreclosure was drawn ready for the judge's signature, and an order appointing a receiver of said property, and all of said papers were by consent of all parties placed in the hands of said Charles S. Fogg. That thereupon, on the 5th day of February, 1894, a stipulation, in writing was made, signed, sealed, and deliv-

ered, by and between this plaintiff and his said attorney,
and said mortgagor and the defendants herein, whereby
it was expressly stipulated and agreed that said Fogg
might file said bill of complaint and answer, and procure
the court to sign said order appointing a receiver and said
decree foreclosing said mortgage at any time he might
desire; and it was therein further stipulated that the
plaintiff would not proceed against the defendants to
enforce their liability upon said notes until on or after
the 1st day of May, 1894, and that such extension should
in no wise release any of the parties to said notes, and that
the defendants thereby agreed that the institution of said
foreclosure suit and the foreclosure of said mortgage in
such manner should not be considered or construed as a
waiver or release of the right to proceed against them;
that all of the defendants herein signed said stipulation,
except the defendant Mildred F. Wallace, and it was in
said stipulation provided that the failure of any of the
defendants herein to sign said stipulation should not af-
fect the liability of those who did sign, but that those
signing should be bound the same as though all had
signed."

It is then averred that the appellant kept and per-
formed all of the terms of said stipulation upon his part,
and that the respondents have received, accepted, and en-
joyed all of the benefits for which they stipulated; that
appellant instituted said foreclosure suit against the mort-
gagor corporation, omitting the respondents herein, and
diligently prosecuted the same in the superior and su-
preme courts, and did all in his power with diligence and
in good faith to collect the full amount of his claim from
the mortgaged property; that the superior court decreed
appellant's mortgage was the first lien on the mortgaged
property, and said mortgaged property was sold under
decree of foreclosure, and the proceeds paid into court,
and, by the terms of said decree of the superior court, ap-
pellant was entitled to and did receive the full amount of

his claim, principal, interest, costs, and attorney's fees; that one John C. Lewis, trustee, the holder of a second mortgage upon said property, and a defendant in said foreclosure suit, appealed from the decree of foreclosure to this court, and this court modified the decree of the superior court in respect to certain of the rolling stock, and held that the Lewis mortgage was a first lien thereon, and remanded the cause to the superior court for further proceedings.

"Thereafter, it appearing in said foreclosure suit in this (superior) court that the plaintiff would be compelled to refund a portion of the sum which he had received in satisfaction of his claim from the proceeds of sale of the mortgaged property, plaintiff, by leave of court, filed in said foreclosure suit and caused to be served upon the defendants herein an amended complaint making the defendants herein parties defendant, and praying that these defendants be brought into said cause and a judgment rendered against them and in favor of the plaintiff for whatever sum this plaintiff should be adjudged to pay to said John C. Lewis, trustee; and shortly thereafter plaintiff, by leave of court, filed a second supplemental and amended complaint in said suit. The defendants herein were duly summoned to appear and answer to said amended complaint, and in due time appeared therein, and on or about January 17, 1900, the defendants herein served and filed their demurrers to said second amended and supplemental complaint, upon the ground that the same did not state facts sufficient to constitute a cause of action against them, and other grounds; and upon the argument of said demurrers the court, on April 21, 1900, sustained said demurrers upon the ground that at that time plaintiff had not yet been ordered or decreed to refund or pay over to said Lewis any part of the money received by plaintiff in satisfaction of his claim out of the proceeds of the sale of the mortgaged property, but that, on the contrary, plaintiff still retained the full amount thereof in his possession, and that the proceeding

in said suit against the defendants herein was then premature; and thereupon on April 21, 1900, defendants herein were dismissed from that suit."

It is then alleged that thereafter, on December 18, 1900, the superior court entered its decree in said foreclosure suit, adjudging that plaintiff must refund and pay to said Lewis, trustee, of the funds received by plaintiff from the proceeds of the sale of the mortgaged property in satisfaction of his claim, the sum of $5,000, and at the same time decreed that the entry of satisfaction of plaintiff's judgment in said foreclosure suit be modified and corrected so as to show a deficiency of said sum of $5,000, with interest from January 18, 1895, at the rate of eight per cent per annum; that prior to the commencement of this action plaintiff paid said sum to said Lewis, and secured the modification of the entry in the execution docket so as to show a deficiency as above specified. It is then alleged that said foreclosure suit was pending, and was diligently and in good faith prosecuted by appellant, and was not finally determined until December 18, 1900, when the final decree of the superior court was made and entered therein; that the Point Defiance Railway Company lost all its property and franchises in the foreclosure suit, and has been ever since insolvent, and without means or property of any kind, and ceased to do business; that no action or proceeding at law is now being prosecuted, or has ever been brought or had, for the recovery of the indebtedness evidenced by said promissory notes or any part thereof, and appellant is not now seeking to obtain satisfaction or execution upon said decree of foreclosure; that there is now due and owing to plaintiff from the defendants the sum of $5,000, with interest at eight per cent. per annum from the 18th day of January, 1895, and an attorney's fee of five per cent. upon the amount

which may be found due. It will be observed that the notes sued on were made on November 27, 1891, and matured one year thereafter. In 1894 an action was begun against one of the makers, viz., the railway company, to foreclose the mortgage. These defendants were not parties thereto. But these defendants, before the action was begun, entered into a stipulation to the effect that the appellant would not proceed to enforce liability against the defendants herein until after May 1, 1894, and that such extension should not have the effect to release any of the makers of said notes. Subsequently, during the pendency of that suit, the appellant attempted to make these defendants parties thereto, but was unsuccessful. Thereafter, in December, 1900, that suit was terminated, and the appellant was required to refund $5,000 on account of the property sold under the original decree therein, and this action is to recover that amount as a deficiency upon the notes.

Since this action was not begun until the year 1901, it is perfectly clear that more than six years have run against the notes, both from the maturity thereof in November, 1892, and from the date fixed by the stipulation, viz., May 1, 1894. In order to avoid the statute of limitations, appellant contends that the statute was suspended by the commencement of the mortgage foreclosure suit in April, 1894, by virtue of §§ 5893 and 4812 Bal. Code. These sections are as follows:

"5893. The plaintiff shall not proceed to foreclose his mortgage while he is prosecuting any other action for the same debt or matter which is secured by the mortgage, or while he is seeking to obtain execution of any judgment in such other action; nor shall he prosecute any other action for the same matter while he is foreclosing his mortgage or prosecuting a judgment of foreclosure."

"4812. When the commencement of an action is stayed

by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action."

This last section clearly provides that where the commencement of an action is stayed by injunction or statutory prohibition, then the statute of limitations ceases to run. It applies to cases where, for some reason beneficial to the debtor, the commencement of the action is prohibited; such as administrators, as in the case of *Brigham-Hopkins Co. v. Gross,* 30 Wash. 277 (70 Pac. 480). It does not apply to cases where the creditor may voluntarily select one remedy which alone can be prosecuted. The commencement of an action cannot be said to be prohibited when the plaintiff is at liberty to pursue the action in one of two or more different forms. Section 5893 was enacted to prevent a multiplicity of suits for the same debt at the same time. It prohibits the foreclosure of a mortgage while the plaintiff is pursuing another action for the same debt. It also prohibits any other action for the same debt while the plaintiff is foreclosing a mortgage. In other words, two separate actions cannot be maintained at the same time for the collection of the same debt. But this section does not prohibit the commencement of an action. The plaintiff may select his remedy. He may bring an action at law upon the notes, or he may bring an action in equity to foreclose his mortgage. He cannot maintain both actions independently at the same time. This section did not prevent the plaintiff from making all the parties to the notes parties to the action and proceeding against all in one action. It simply prohibited the plaintiff from splitting up his cause of action and maintaining two separate actions for the same debt at the same time. He had his election of remedies. In

either remedy he was at liberty to join all the makers of the note in one action, or, since the notes were joint and several notes, he was at liberty to proceed against any one of the makers without joining the others. He was not prohibited from bringing his action. He was at liberty to pursue either of the remedies. He voluntarily pursued his remedy to foreclose the mortgage against one of the makers. Where a party has a choice of remedies and makes his election, the statute does not cease to run as to other remedies. *Garrett v. Bicklin,* 78 Iowa, 115 (42 N. W. 621); *Hanna v. Kasson,* 26 Wash. 568 (67 Pac. 271). In *Hanna v. Kasson, supra,* where an action was brought and judgment entered upon notes secured by a mortgage, and subsequently an action was brought to foreclose the mortgage, we held that the entry of the judgment could not have the effect to extend the statute of limitations as to a right of action upon the mortgage. If an action upon the notes does not suspend the statute as to the remedy upon the mortgage, an action to foreclose the mortgage certainly does not suspend the statute as to a remedy upon the notes. The rule must apply the same in both cases. These sections above quoted do not have the effect contended for by appellant. The action is clearly barred.

The judgment is therefore affirmed.

FULLERTON, C. J., and HADLEY, ANDERS and DUNBAR, JJ., concur.